**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 16-349-DLB**

**CHERYL ANN JOAN VIRES**                                                      **PLAINTIFF**


vs.                                    **MEMORANDUM OPINION AND ORDER**


**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**                                          **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 20, 2013, Plaintiff Cheryl Ann Joan Vires filed an application for disability insurance benefits ("DIB"), alleging disability beginning on November 4, 2011. (Tr. 173-77). Specifically, Plaintiff alleged that she was limited in ability to work due to osteoarthritis of her hands. (Tr. 211).

Plaintiff's claim was denied initially and on reconsideration. (Tr. 89, 90; *see also* 107-09, 114-20). Plaintiff subsequently amended her disability date to July 27, 2012. (Tr. 195). At Plaintiff's request, an administrative hearing was conducted on January 26, 2015, before Administrative Law Judge ("ALJ") Greg Holsclaw. (Tr. 36-77). On June 23, 2015, ALJ Holsclaw ruled that Plaintiff was not entitled to benefits. (Tr. 14-34). This

1

decision became the final decision of the Commissioner when the Appeals Council denied review on July 13, 2016. (Tr. 1-6).

On September 11, 2016, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for the Court's review. (Docs. # 7, 9, and 12).

## II. DISCUSSION

### A. *Overview of the Process*

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, provided it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health and Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## B. *The ALJ's Determination*

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her amended alleged onset date, July 27, 2012, through her date last insured. (Tr. 19). At Step Two, the ALJ determined that Plaintiff had two severe impairments: arthritis of the hand(s) (to include left CMC joint arthritis)/lateral epicondylitis; and a history of vertigo/syncope. (Tr. 20). At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 22). Specifically, the ALJ considered Listing 1.02B and found that the record did not show that Plaintiff was "unable to effectively perform fine and gross movements effectively." (Tr. 22). Nor did Plaintiff's impairments show inflammatory arthritis under the immune system disorders in Listing 14.09, or any other impairment or combination that met or medically equaled a Listing. (Tr. 22-23).

At Step Four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of medium work, as defined in 20 C.F.R. § 404.1567(c), with the exertional and non-exertional limitations as follows:

> [N]o more than six hours of standing/walking out of an eight-hour workday, sitting no more than six hours out of an eight hour workday, and pushing/pull only to the medium weight limits except should never climb ladders, ropes, or scaffolds; no more than frequent (versus constant/continuous) climbing of ramps/stairs, stooping, kneeling, crouching or crawling; unlimited balancing; no exposure to dangerous moving machinery or unprotected heights; and no work that requires more than frequent fine fingering with the left, non-dominant hand.

(Tr. 23). Based upon the RFC, the ALJ concluded that Plaintiff was not able to perform her past relevant work. (Tr. 28). Accordingly, the ALJ proceeded to Step Five and found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date through the date of decision. (Tr. 30).

### C. *Plaintiff's Arguments*

Plaintiff advances two arguments on appeal. First, Plaintiff argues that the ALJ failed to give controlling weight to the opinion of her treating physician, instead assigning "great weight" to other medical opinions. (Doc. # 7-1 at 1). Second, Plaintiff alleges that the ALJ misapplied the "Unsuccessful Work Attempt" rules against the Plaintiff. *Id.* Each of these arguments will be addressed in turn.

#### 1. The ALJ did not err in weighing the opinion of Doctor Hunt, a treating source.

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1502. A

4

treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.* A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, and a non-examining source is one that has not examined the claimant but has provided medical or other opinion evidence in the case. *Id.*

Generally, the ALJ must give "controlling weight" to the opinions of treating sources, so long as that source's opinion on the "nature and severity of [the] impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

If the ALJ does not give the claimant's treating physician controlling weight for the reasons above, the ALJ must still consider the treating source's opinion and determine how much weight to give it, by considering a number of factors. 20 C.F.R. § 404.1527(c)(2). The ALJ must consider the length, frequency, nature and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with evidence in the record; physician's specialization; and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ evaluates the opinions of non-treating sources by considering these same factors. *See id.*

Plaintiff's Motion for Summary Judgment (Doc. # 7) assigns as error the weight the ALJ gave to the medical opinions of Doctors Hunt, Westerfield, and Sadler. (Doc. # 7-1

5

at 11). Plaintiff's arguments, however, only go to the ALJ's alleged failure to assign Doctor Hunt's opinion "controlling weight." *Id.* at 11-13. Plaintiff argues that the ALJ failed to give good reasons why Doctor Hunt's opinions were not supported by "<u>any</u> objective findings in the record" or were inconsistent with the other substantial evidence in the record. *Id.* at 12.

Plaintiff's position on the relevant codes and case law is unsupported by either. There is no "any objective finding" requirement for the first prong of the controlling-weight test; instead, the opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Gayheart* 710 F.3d at 376 (citing 20 C.F.R. § 404.1257(c)(2)). In addition, the opinion must not be "inconsistent with the other substantial evidence in [the] case record." *Id.* The two-prong test as laid out in subsection (c)(2), and enunciated in *Gayheart*, requires both prongs to be met for a treating source opinion to be given controlling weight. If Doctor Hunt's opinions fail to satisfy either prong, controlling weight need not be given to those opinions.

In determining the Plaintiff's RFC, the ALJ analyzed the record, including medical and testimonial evidence. (Tr. 23-27). The ALJ considered Plaintiff's testimony at the hearing on this matter, the questionnaires she had filled out, the objective radiographic findings, and the treatment notes from Doctor O'Neill, Doctor Hunt, and Jill Crawford, ARNP. (Tr. 24-25, 27). The ALJ also considered the March 2015 opinion of treating-physician Doctor Hunt; the September 2013 opinion of examining physician Doctor Westerfield; the December 2013 opinion of reviewing physician Doctor Sadler; the medical records of previous physician Doctor O'Neill; the medical records submitted from

6

Doctors O'Neill, Westerfield, and Hunt; the physical therapy records submitted from Doctor Hunt; and the medical records produced by Jill Crawford, ARNP. (Tr. 24-27).

The ALJ declined to give Doctor Hunt's opinion controlling weight, finding that it was not well-supported by, and was inconsistent with, the record evidence. First, Doctor Hunt's opinion was inconsistent with Plaintiff's own testimony regarding her activities of daily living. The Plaintiff testified she was able to "care for her own personal care needs ... drive, do laundry, play board games with her grandchild, feed self ... do dishes several times a week, and grocery shop weekly." (Tr. 27).

Furthermore, the ALJ determined that Doctor Hunt's March 2015 medical opinion that Plaintiff could rarely grasp or handle was not supported by the evidence. (Tr. 25). The medical evidence related to Plaintiff's experience with both Doctors Hunt and O'Neill showed a "treatment history [that] has overall remained relatively modest with noted improvement with medication and physical therapy intervention." (Tr. 26). The treatment history showed that by June 2013, Plaintiff was making "considerable" progress with physical therapy, and that in a January 2015 follow up report, indicated her symptoms were "manageable." *Id.* In a parallel timeline, Plaintiff saw Doctor Hunt for treatment in mid-2013, but then did not see him again until December 2014. *Id.* In effect, the ALJ compared the year and a half between treatments, the type of work Plaintiff had engaged in during the interim, and Doctor Hunt's notes about Plaintiff in January 2015 with Doctor Hunt's opinion given just two months later, and found that the March 2015 opinion was unsupported by the evidence.

In contrast, the ALJ gave great weight to the opinions of examining physician Doctor Westerfield and reviewing physician Doctor Sadler, finding that the conclusions

were "reasonably supported by and consistent with the weight of the evidence as a whole." (Tr. 25). In addition, the ALJ found that Doctor Sadler's "opinion [was] based upon a thorough review of the available medical record before her (and since), well-reasoned, and rendered by an individual with a comprehensive understanding of agency rules and regulations." *Id.*

After conducting an examination in in September 2013, Dr. Westerfield's final impression was that "[i]t may be that [Plaintiff] cannot do repetitive motions with her hands, but she certainly is capable of using her hands in most work activities." (Tr. 288). Similarly, Doctor Sadler opined that Plaintiff had excertional limits of 50 pounds occasionally, up to 25 pounds frequently, the same limits on pushing and pulling, unlimited gross manipulation, and limited ability to finger on her left hand. (Tr. 96-98).

The ALJ explained that Doctor Hunt's opinion was inconsistent with and not supported by the medical evidence in the record. Thus, the ALJ determined Doctor Hunt's opinion did not merit controlling weight and detailed his "good reasons" for doing so in accordance with 20 C.F.R. § 404.1527(c). Accordingly, the Court finds no error in this portion of the ALJ's Step Four analysis.

In the end, Plaintiff is asking this Court to find that the ALJ misinterpreted the evidence or emphasized certain aspects of the medical record in favor of others. However, this is equivalent to requesting a *de novo* review of the record, a task far beyond the Court's limited role in determining whether the ALJ's finding is supported by substantial evidence. *See Roberts v. Astrue*, No. 1:09-01518, 2010 WL 2342492, at *9 (N.D. Ohio June 9, 2010). As stated earlier, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite

conclusion. *Smith v. Chater*, 99 F.3d at 781-82. Substantial evidence exists to support the ALJ's decision, and the Court's review must stop there.

2. **The ALJ's consideration of Plaintiff's unsuccessful work attempt was properly used to evaluate Plaintiff's credibility.**

An unsuccessful work attempt is a carve-out from the ALJ's determination of whether a claimant has engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1574(a)(1) ("[The Commissioner] generally consider[s] work that [the claimant is] forced to stop or to reduce below the substantial gainful activity level after a short time because of [an] impairment to be an unsuccessful work attempt. [The claimant's] earnings from an unsuccessful work attempt will not show that [he or she is] able to do substantial gainful activity."); *see also Anderson v. Comm'r of Soc. Sec.*, No. 3:13-CV-145, 2014 WL 346296, at *9 (N.D. Ohio Jan. 20, 2014) ("Unsuccessful work attempts may serve as evidence that an individual is unfit to work, but this evidence, on its own, does not require the Commissioner to conclude that the person is disabled.").

Plaintiff's unsuccessful work attempt was used to neither prove nor disprove her claim of disability, but to evaluate her credibility. The ALJ explicitly stated that he was considering the unsuccessful work attempt within the context of Plaintiff's credibility as to the intensity, persistence, and limiting effects of her impairment: "The claimant is not entirely credible, inasmuch as she has been able to do work activity that is close to SGA levels." (Tr. 27; *see also* Tr. 25). In support of this determination, the ALJ contrasts Plaintiff's statements as to her disability with those of her treating physician—Doctor Hunt—as the clinical notes indicate:

> The patient is a 60-year old female we saw last year for the same similar complaints. She has CMC joint arthritis. She is trying to apply for disability with this. She is starting a new job." (Tr. 346); and "The patient is here

9

> today for a follow up. She is a 60-year old female who has tried therapy and different bracing. It doesn't seem to help. It seems to be manageable for her at this point and time. She is doing an inspection job at Toyota, but that is still bothering her.

(Tr. 345).

The ALJ also noted from these reports that although the Plaintiff had "decreased strength for pincer grip of the left thumb ... she was noted to have manageable symptoms." (Tr. 27). The unsuccessful work attempt was used solely as evidence to help the ALJ assess Plaintiff's credibility regarding the intensity, persistence, and limitations of her impairment.

The Court must afford the ALJ great weight and deference in determining Plaintiff's credibility, so long as the determination is supported by substantial evidence. *Jones*, 336 F.3d at 475-76. Contrary to Plaintiff's assignment of error, her unsuccessful work attempt was not used to determine that she could work, but that her testimony was less credible. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (holding that when a claimant's complaints concerning the intensity and persistence of her symptoms are unsupported by objective medical evidence, the ALJ is required to make a determination of the claimant's credibility "based on a consideration of the entire case record."); *See also Moore v Comm'r of Soc. Sec.* 573 F.Appx. 540, 542 (6th Cir. 2014). In this case, the ALJ found Doctor Hunt's medical notes and Plaintiff's unsuccessful work attempt created doubt as to Plaintiff's total credibility concerning her impairment. (Tr. 25, 27).

Finally, Plaintif suggests that the Commissioner's Motion for Summary Judgment should be construed to admit that Plaintiff was disabled before the ALJ decision, and that the only question remaining is *when* she became disabled. (Doc. # 12). As stated *supra*,

this Court's review of the Commissioner's decision is limited to whether the decision was made following proper legal standards and whether the decision is supported by substantial evidence. *See Gayheart*, 710 F. 3d at 374. This Court has already determined that the ALJ's decision was supported by substantial evidence. Plaintiff cannot now ask the Court to make a factual determination that Plaintiff became disabled at some time before the ALJ decision. Such a request is both contrary to, and well beyond, the scope of the Court's review.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)  The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)  Plaintiff's Motion for Summary Judgment (Doc. # 7) is hereby **DENIED**;

(3)  Defendant's Motion for Summary Judgment (Doc. # 9) is hereby **GRANTED;** and

(4)  A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 24th day of August, 2017.



Signed By:
*David L. Bunning* DB
United States District Judge

K:\DATA\SocialSecurity\MOOs\Lexington\16-349 Vires MOO.docx